Michelle R Burrows 861606
MICHELLE R. BURROWS PC
16869 SW 65th Ave. # 367
Lake Oswego, OR 97035
503-241-1955
Michelle.r.burrows@gmail.com
www.oregoncivilrights.com

Ezra Glanzer, WSBA # 50365, admitted *pro hac vice*
GLANZER LAW PLLC
2024 W Northwest Blvd.
Spokane, WA 99205
509-326-4526
ezra@glanzerlaw.com

Rian Peck, OSB # 144012
VISIBLE LAW LLC
333 SW Taylor St., Ste. 300
Portland, OR 97204
503-773-0103
rian@visible.law

          Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

Portland Division

| | |
|---|---|
| ASHLEY D. ANDREWS, an individual,<br><br>          Plaintiff,<br><br>v.<br><br>CITY OF SAINT HELENS, a Municipal Corporation, ADAM S. RAETHKE, and EVIN V. EUSTICE,<br><br>          Defendants. | No.: 3:22-cv-01128<br><br>FIRST AMENDED COMPLAINT<br>4th and 14th Amendments of the U.S. Constitution: Unreasonable Seizure, Excessive Force<br><br>42 U.S.C. § 1983<br><br>DEMAND FOR JURY TRIAL |

COMES NOW plaintiff, by and through her undersigned attorneys, and for the following causes of action against the defendants, and each of them, allege as follows:

1 - COMPLAINT

**JURISDICTION AND VENUE**

1.

This Court has jurisdiction over the subject matter arising under the United States Constitution and pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(3)-(4). This Court further has supplemental jurisdiction over plaintiff's claims arising under state law which derive under a common nucleus of operative facts such that plaintiff would be expected to try all claims in a single judicial proceeding pursuant to 28 U.S.C. § 1367.

2.

Venue is proper under 28 U.S.C. § 1391 because the acts giving rise to this lawsuit occurred in Saint Helens, Oregon.

**PARTIES**

3.

At all relevant times hereto, Plaintiff Ashley Andrews was a resident of Washington State. At the time of her injuries, she was visiting her mother in Saint Helens, Oregon.

4.

Saint Helens, Oregon is a municipal corporation with the right to sue and be sued. It is responsible for the policies and procedures of the Saint Helens Police Department and the police officers it employs.

5.

Defendant Adam S. Raethke was a certified police officer of the Saint Helens Police Department acting under color of law and within the scope of his employment. He is sued in his individual capacity. Defendant Raethke is a former Marine and Corrections officer.

6.

Sergeant Evin Eustice was a certified police officer of the Saint Helens Police Department acting under color of law and within the scope of his employment. He is sued in his individual capacity.

**FACTS**

7.

On August 12, 2020, Plaintiff Ashley Andrews was visiting her mother Angel Powell at 210 North 12th Street, Saint Helens, Oregon 97051. Plaintiff lives in Spokane, Washington.

8.

During the visit on August 12, 2020, Plaintiff and her sister Alyssa Jones were engaged in a dispute which resulted in mutual assaults. Plaintiff called the police via 911 and reported that she had been physically attacked there by Ms. Jones.

9.

Defendant Raethke and Officer Jamin Coy responded to 210 North 12th St. They were both in uniform and carrying weapons.

10.

Officer Coy was the first to arrive on scene. The two sisters were in a tussle outside. He separated them by directing Ms. Jones to go back into her mother's apartment, which deescalated the situation. Defendant Raethke arrived shortly after Officer Coy.

11.

Officer Coy took statements from Plaintiff. She was emotional and accused her sister of scratching her neck and biting her hand. Officer Coy observed two red marks on the middle of the right of Plaintiff's neck and a small mark on the inner side of her left thumb consistent with a

bite mark from a single tooth. He photographed those injuries. Officer Coy's interview of Plaintiff was recorded on his body worn camera.

12.

Defendant Raethke interviewed Ms. Jones. She told him that Plaintiff became angry about her applying for state benefits when she was not homeless. Ms. Jones claimed Plaintiff punched her but stated she was not injured. Defendant Raethke did not observe any injuries to Ms. Jones. His interview of her was recorded on his body worn camera but out of the hearing of Officer Coy.

13.

Following Officer Raethke's interview with Ms. Jones, both officers muted their body worn cameras and conferred with each other for about twenty minutes. Plaintiff Andrews stood on the porch of her mother's apartment waiting for the officers. She was considerably calmer. Despite finding marks of an assault on Plaintiff and thinking that an arrest was not mandatory under the circumstances, the officers decided to arrest Plaintiff for the charges of Disorderly Conduct II and Harassment because they wanted to keep the two sisters separated.

14.

Plaintiff told the officers that, before they took her into custody, she wanted to remove her bags from her mother's apartment. The officers ordered her to remain on the porch. She complied as her mother retrieved two bags from the interior of the apartment. Plaintiff was told she was under arrest but could finish her cigarette. Plaintiff understood she was under arrest but was becoming emotional again. She told officers she wanted to place her bags in her truck so her sister did not "steal" from her. Officer Coy told her he would put the bags in her truck for her. Plaintiff moved toward her truck with one black bag over her left arm and a paper bag in her

right arm. Before Plaintiff opened her truck door, Officer Coy grabbed her by the left wrist while the black bag was still secure over Plaintiff's arm.

15.

When Officer Coy grabbed Plaintiff's wrist, it resulted in her swinging around to face him. As she swung around, Officer Coy perceived that she tried to strike him. Officer Coy exclaimed, "Excuse me!" but continued holding onto her left wrist and did not increase the level of force he was using against her.

16.

Defendant Raethke, who was standing behind Officer Coy, responded differently: He grabbed Plaintiff by the neck and slammed her into the exterior wall of the house. Her head hit the wall with enough force to break off a piece of the siding. Both officers are substantially larger than Plaintiff. Both officers were armed with several forms of weapons.

17.

After Defendant Raethke slammed Plaintiff into the house, she crumpled to the ground. Plaintiff's left arm was hampered by the combination of Officers Coy's restraint on it and the black bag which was now twisted behind her. Defendant Raethke positioned his body on top of Plaintiff. As a basic instinct, Plaintiff held up her hands in a defensive motion.

Without warning, Defendant Raethke wound his right hand back and punched Plaintiff in the eye. Plaintiff was disoriented and blinded by the punch, and her eye began to swell and bruise immediately. The officers handcuffed her. She was crying and in obvious pain. She began gagging and spit up blood and a fragment of her own facial bone or cartilage.

18.

The officers requested that an ambulance respond to the scene. The EMTs took Plaintiff to Legacy Emanuel Medical Center in Portland, where doctors diagnosed her with a fracture of her right orbital medial wall (or eye socket).

19.

Shortly after Defendant Raethke punched Plaintiff, Chief Greenway and his top command staff were informed of the incident. In response, command staff ordered Defendant Raethke to identify and interview witnesses to his use of force and look for home cameras that may have captured the incident. Group texts among the SHPD leadership show that the Chief and Lieutenant of Police were worried about public perception surrounding this incident. Screenshots of the SHPD Leadership group chat show that the SHPD Facebook page was being "blown up" and Lieutenant Hogue wanted to draft a press release to "get us out in front of this":

 

20.

Text messages in the same SHPD Leadership group chat indicate that command staff also assigned a member of leadership to work with Defendant Raethke in writing his report. Chief Greenway ordered the command staff to specifically ensure that Defendant Raethke's report addressed every element of *Graham v. Connor* to justify the use of force. Before writing his report, SHPD Sergeant Treat sat down with Defendant Raethke and Officer Coy together, asking them everything that had happened. Sergeant Treat then watched body worn camera footage of the incident with Defendant Raethke. After all that, Defendant Raethke wrote his report. Sergeant Treat reviewed and edited Defendant Raethke's report before it was finalized.

21.

In his report and in interviews, Defendant Raethke claims that Plaintiff grabbed for and scratched at his throat just before he punched her, resulting in his head being pushed upward to almost a 45-degree angle. The video of the incident does not support this claim.

22.

SHPD Sergeant Castilleja is the member of leadership who was assigned to interview Plaintiff at the hospital and document her injuries. Though Plaintiff had invoked the right to counsel at the scene, he was unclear whether he knew she had invoked her Fifth Amendment privileges before he interviewed her.

23.

SHPD Policy 301.2 requires the Department to "objectively evaluat[e]" its officers' use of force. Nevertheless, when Sergeant Castilleja interviewed Plaintiff at the hospital, he had every faith that all the officers in his department "do the right thing, every time." He approached

his interview with Plaintiff assuming a "trust but verify" attitude—meaning he trusted that Officer Raethke "did the right thing" but needed to verify it through his interviews.

24.

Defendant Raethke is around 6'0" tall and a former United States Marine. Performance reviews from around the date of this incident noted his excellent physical conditioning and health. Plaintiff is about 4'11" and weighed about 115 pounds in August 2020.

25.

Defendant Raethke has a long history of using excessive force. This lawsuit is not the first one filed against him alleging police brutality: Just over three months before Defendant Raethke punched Plaintiff in the eye, he was sued in federal district court for punching and then driving his knee into a subdued suspect's rib cage. Complaint (ECF 1), *Barror v. City of St. Helens & Adam Raethke*, No. 3:20-cv-00731-SB (D. Or. May 4, 2020). Defendant Raethke's use of force incident reports also appear to constitute an outsized proportion of force reported by police officers in the St. Helen's Police Department. For instance, in 2019, there were some 20 officers authorized to make arrests. Defendant Raethke alone was responsible for filing 14% of SHPD's use of force incident reports that year—a striking number in its own right, but especially when considering that he was hired by SHPD in June 2019. His outsized share of force continued in 2020, with Officer Raethke being singlehandedly responsible for 16% of SHPD's use of force incidents that year.

26.

Sergeant Evin Eustice conducted a Use of Force Review and concluded that Defendant Raethke acted within SHPD policy when he grabbed Plaintiff by the throat, slammed her into the side of the apartment, and then punched her in the eye.

27.

The Columbia County District Attorney conducted his own separate review of the incident with an eye toward possible criminal charges against Defendant Raethke. As part of his review, the DA hired Dr. Bill Lewinski of the Force Science Institute to offer an opinion about Defendant Raethke's use of force. Dr. Lewinski concluded that, even though the punch may have fallen within policy, he was "very concerned" about the level of force used. He pointed out that Plaintiff's head, which was on the asphalt, absorbed the entirety of Defendant Raethke's punch—an "extremely dangerous" condition. He stated: "I would not recommend at this point in time that this technique be used in this circumstance." He also lamented the lack training that Defendant Raethke demonstrated. Ultimately, however, the Columbia County District Attorney declined to prosecute Defendant Raethke, because he believed he could not disprove beyond a reasonable doubt that Defendant Raethke believed his use of force was reasonable.

28.

The Columbia County District Attorney, however, dismissed all criminal charges against Plaintiff.

29.

On top of her orbital fracture, Plaintiff has experienced continued cognitive and sinus problems because of this incident.

30.

SHPD has never disciplined Defendant Raethke for any use of force. He has not even received any corrective training in response to his uses of force.

**FIRST CLAIM FOR RELIEF: Unreasonable Use of Force**
**42 U.S.C. 1983 4th Amendment to the United States Constitution**

**Defendant Raethke**

31.

Plaintiff realleges all previous paragraphs as if more fully set forth herein.

32.

Plaintiff is entitled to be free from unlawful seizure of her person under the parameters of the Fourth Amendment to the United States Constitution. Defendant Raethke violated Plaintiff's rights to be free from undue, unreasonable, and excessive force in these ways:

A.  Defendant Raethke used objectively unreasonable excessive force when he slammed Plaintiff into a wall causing her to become disoriented and injured.

B.  Defendant Raethke used objectively unreasonable and malicious force when he slammed a closed fist into Plaintiff's face without justification and without any objectively reasonable basis, breaking her orbital wall. This striking of Plaintiff was not intended to defend himself but was simply intended to inflict pain and punish Plaintiff.

33.

At all times material, the law was clearly established that Defendant Raethke's use of force, in the manner and under the circumstances used against Plaintiff, was objectively unreasonable and any reasonable officer would have known that the force used against Plaintiff was unreasonable and violated her clearly established Fourth Amendment rights. Defendant Raethke's conduct was well-defined by law and he knew or should have known that his conduct was not only well below the standard prescribed by law, but illegal *per se.*

34.

Defendant Raethke's conduct was malicious, oppressive, or in reckless disregard of Plaintiff's Fourth Amendment rights.

35.

As a direct and proximate result of Defendant Raethke' unconstitutional and retaliatory acts, Plaintiff suffered extreme physical injury including a broken orbital bone, cognitive impairment, and deterioration in her ability to work. Because of the vicious and unconstitutional beating, Plaintiff suffered extreme psychological harms, fear, outrage, betrayal, offense, indignity and insult causing damage in amounts to be determined at trial.

36.

Plaintiff is entitled to an award of punitive damages against Defendant Raethke to punish and deter him and others from similar deprivations of constitutional rights in the future.

**SECOND CLAIM FOR RELIEF: Supervisory Liability**
**42 U.S.C. 1983 4th Amendment**
**Sgt. Eustice**

37.

Sergeant Evin Eustice is a supervisor with the St. Helens Police Department.

38.

Defendants in a supervisory capacity are held liable for constitutional violations due to their own culpable action or inaction either through (a) their own direct participation in the violations; (b) failure to train, supervise or control subordinates; (c) their own acquiescence in the constitutional deprivations; (d) failure to remedy a wrong after learning of the violation; (e) creating a custom, practice or policy that leads subordinate staff to commit constitutional

violations or allowing such custom, practice or policy to continue; or (f) other conduct which shows a reckless or callous indifference to the constitutional rights of others.

39.

Upon information and belief, Sergeant Eustice authorized or acquiesced to the conduct alleged herein which caused Plaintiff's injuries. Sergeant Eustice was aware of Defendant Raethke's history of violence, existing excessive force complaints, and had personally reviewed each of Defendant Raethke's use of force reports. At no time has Sergeant Eustice attempted to discipline or counsel Defendant Raethke in the proper and appropriate use of force in making arrests.

**THIRD CLAIM FOR RELIEF: *Monell* Liability**
**42 U.S.C. 1983 4th Amendment**
**City of St. Helens**

40.

Plaintiff realleges all previous paragraphs as if more fully set forth herein.

41.

Defendant the City of Saint Helens at all relevant times has maintained a policy, custom, or practice that has been the cause and the moving force behind the violation of citizens' rights. This policy, custom, or practice involves:

A. The use of objectively unreasonable and excessive force on detainees and arrestees.

B. Using extreme force even while being supervised and no officer is thereafter disciplined.

C. St. Helen's Police Department has a policy and practice of failing to properly train officers in the real standard of objectively reasonable force.

D. St. Helen's Police Department has a policy and practice of failing to discipline officers who use excessive and unconstitutional force.

E. St. Helen's Police Department has a policy, practice and custom of engaging in systemic efforts to cover up, conceal and obscure facts to avoid any responsibility for the excessive force of its officers.

42.

The above-described policy, custom, or practice was the direct proximate cause of Defendant Raethke violating Plaintiff's Fourth and Fourteenth Amendment rights, enforceable through 42 U.S.C. § 1983.

**SUPPLEMENTAL JURISDICTION CLAIMS**
**City of St. Helens**

**FOURTH CLAIM FOR RELIEF**
**COMMON LAW – ASSAULT AND BATTERY**
**City of St. Helens**

43.

Plaintiff realleges all previous paragraphs as if more fully set forth.

44.

By his words and acts, Defendant Raethke threatened to do bodily harm to Plaintiff.

45.

By using excessive force and unreasonable force, Defendant Raethke caused harmful or offensive bodily contact with Plaintiff, causing extreme injuries without any legal justification, while plaintiff was restrained.

46.

The aforesaid acts were unprivileged.

47.

The aforesaid acts of Defendant Raethke were the direct, proximate cause of Plaintiff's injuries.

**FIFTH CLAIM FOR RELIEF**
**COMMON LAW—NEGLIGENT HIRING, SUPERVISION AND TRAINING**
**City of St. Helens**

48.

Plaintiff realleges all previous paragraphs as if more fully set forth.

49.

The City of St. Helens is liable for all the negligent acts of its own making and those of its employees. The City of St. Helens' conduct was negligent such that it was reasonably foreseeable that the injuries and damages suffered by Plaintiff would occur. Furthermore, under Oregon law there is a special duty of care between a law enforcement officer and a detainee because of a special relationship. Defendants failed to meet that duty of care.

50.

The City of St. Helens was negligent in one or more of the following particulars:

a. Failure to conduct a reasonable and objective investigation into the hiring of Defendant Raethke prior to hiring him. This failure includes the failure to consider violent acts committed by Defendant Raethke prior to being hired and interviewing other victims of Defendant Raethke's violent attacks;

b. Failure to provide Defendant Raethke with use of force training including the legal standards prior to arresting Plaintiff;

c. Failure to adequately monitor Defendant Raethke in his arrests and use of force;

d. Failure to discipline, counsel or investigate the numerous use of force incidents engaged in by Defendant Raethke;

e. Failure to provide ongoing training on the use of force for Defendant Raethke, including the proper timing and use of focused blows, physical takedowns and using de-escalation techniques; and

f. Failure to take any corrective steps to manage, supervise or monitor Defendant Raethke for his statistically high rate of excessive force.

51.

As a result of the negligence of the City of St. Helens, Plaintiff was the victim of Defendant Raethke's excessive use of unauthorized force which caused her serious and dangerous physical injuries and resulting economic damages, as well as emotional loss and other non-economic damage.

**JURY TRIAL**

52.

Plaintiff demands a trial by jury on all issues so triable.

53.

Plaintiff is entitled to her attorney fees on the Constitutional claims pursuant to 42 U.S.C. § 1988.

**PRAYER**

WHEREFORE, Plaintiff seeks the following relief:

1.      Compensation for past, present, and future counseling, medical, and related health care expenses, all in amounts to be proven at trial;

2.      Compensatory and general (non-economic) damages for past, present, and future pain and suffering, severe emotional distress, humiliation, anxiety, depression, loss of enjoyment of life, cognitive impairment, impact on pregnancy, and any other general and non-pecuniary damages as opined by plaintiff's experts, all in amounts to be proven at trial;

3.      For prejudgment interest of liquidated damages;

4.      For punitive damages, as allowable under federal law for violation of 42 U.S.C. § 1983 and any other federal law for which punitive damages are recoverable;

5.      For reasonable attorneys' fees and costs of litigation, pursuant to 42 U.S.C. § 1988 or other applicable federal law; and

6.      For such other further relief as the Court may deem just and equitable.

Dated this 10th day of May 2024.

Respectfully submitted,

/s/Michelle R. Burrows
Michelle R. Burrows OSB86160
Of Attorneys for Plaintiff